```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
GULF INSURANCE COMPANY,              |
                                     |
          Plaintiff,                 |
                                     |
     -against-                       |    03 Civ. 2894 (LLS)
                                     |
THE CALDOR CORPORATION f/k/a/        |    OPINION AND ORDER
CALDOR, INC., SUSAN GLASBRENNER      |
and DAVID GLASBRENNER,               |
                                     |
          Defendants.                |
------------------------------------X
```

In this declaratory judgment action, defendants David and Susan Glasbrenner move to dismiss the amended complaint for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim on federal due process or equal protection grounds.

In the amended complaint, Gulf Insurance Company seeks a declaratory judgment absolving it of liability to the Glasbrenners under a 1993 insurance policy. The amended complaint must be dismissed because this Court lacks personal jurisdiction over the Glasbrenners, who are the only real (as opposed to nominal) defendants.

**1.**

On April 17, 1994, Susan Glasbrenner was injured in a Caldor department store in Somerdale, New Jersey. She and her husband David filed a personal injury lawsuit against

Caldor[1] on February 1, 1995 in the Superior Court of New Jersey.

On September 18, 1995, Caldor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. (LoBosco Oct. 3, 2003 Aff. ("LoBosco Aff.") Ex. G.) The filing of the bankruptcy petition automatically stayed all claims against Caldor, including the Glasbrenners' lawsuit.

On June 21, 1996, the Glasbrenners filed proofs of claim in the Caldor bankruptcy proceeding, asserting prepetition personal injury claims against Caldor. (LoBosco Aff. Ex. A & B.) The Glasbrenners participated in the mandatory alternative dispute resolution ("ADR") program adopted by the Bankruptcy Court, which allowed them to choose binding or non-binding arbitration. The Glasbrenners chose non-binding arbitration and, in 1999, received and rejected an ADR award and filed a notice of intent to litigate their personal injury claims.

By order dated October 21, 1999, the Bankruptcy Court granted the Glasbrenners the limited relief of allowing

---

[1] Caldor, Inc. merged into The Caldor Corporation in October 1993. (Am. Compl. ¶ 15; LoBosco Aff. Ex. E.) For the purposes of this opinion, the Court will refer to both entities as "Caldor" except as otherwise noted.

them to sue Caldor in the District Court for the Southern District of New York. (LoBosco Aff. Ex. L.) It does not appear whether they did so. In any event, by application dated January 23, 2001, the Glasbrenners asked the Bankruptcy Court to modify its relief to allow them to litigate their claims against Caldor in the Superior Court of New Jersey, rather than the Southern District of New York. (LoBosco Aff. Ex. J.) Their request was granted in an order dated March 8, 2001, which

> ORDERED, that except as modified herein any verdict or judgment entered in favor of the Claimants will be limited solely to the proceeds of the Debtors' applicable insurance coverage, and will not be collectible against or realized from the Debtors' assets nor act as a claim against the Debtors in the within Chapter 11 case[.]

(Ellison Sept. 4, 2003 Aff. ("Ellison Aff.") Ex. I.)

Caldor was adjudged administratively insolvent and authorized to wind down its business in January 1999. On October 2, 2001 the Bankruptcy Court authorized Caldor's final distribution, and Caldor's Chapter 11 cases were dismissed on November 8, 2001. (LoBosco Aff. Ex. C. ¶¶ 3, 17.)[2]

---

[2] In November and December of 2003, Gulf moved in the Bankruptcy Court to enforce the 1999 ADR award and filed an adversary complaint seeking an order vacating the lift-stay order that allowed the Glasbrenners to proceed in New

On June 6, 2003, based on the April 11 verdict in a five-day jury trial, the Superior Court of New Jersey, Camden County entered judgment for the Glasbrenners and against Caldor in the amount of $2,647,827.91, including interest (the "New Jersey Judgment"). In accordance with the Bankruptcy Court's March 8, 2001 order, the New Jersey Judgment provided that it could be collected only from Caldor's available insurance coverage. (Ellison Aff. Ex. J.)

**2.**

At the time of the underlying accident, Caldor maintained primary insurance policies with an insurance company that is now insolvent. (Glasbrenners' Mem. Supp. Mot. to Dismiss 7; Ellison Aff. Ex. L, Complaint ¶ 35.) Caldor also had an excess insurance policy with Gulf Insurance Co. ("Gulf") (the "Gulf Policy").

Gulf filed the present lawsuit on April 24, 2003 seeking a declaratory judgment that it is not liable for

---

Jersey. In both applications, Gulf argued that the Glasbrenners' notice of intent to litigate the ADR award was not timely filed, which, under the Bankruptcy Court's ADR rules, would mean that the ADR award became final and binding. On May 3, 2004, the Bankruptcy Court denied Gulf's motion and dismissed its adversary complaint. Those rulings were recently affirmed by Judge Richard J. Holwell of this Court. See Gulf Ins. Co. v. Glasbrenner, Nos. 04 Civ. 4456 (RJH), 04 Civ. 4457 (RJH), 2006 WL 1387614, at *1 (S.D.N.Y. May 22, 2006).

the New Jersey Judgment, alleging that certain terms of the Gulf Policy were not satisfied, and that Gulf was not given notice of the Glasbrenners' claims until November 21, 2002. Gulf also claims it is entitled to recoup or set off Caldor's indebtedness to Gulf against any liability on the New Jersey Judgment.

On June 11, 2003, the Glasbrenners moved to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction and improper venue or, if there was jurisdiction, for abstention from exercising it. They simultaneously filed a direct action against Gulf in the Superior Court of New Jersey seeking payment on the New Jersey Judgment. (Ellison Aff. Ex. L.) Gulf removed that case to the United States District Court for the District of New Jersey, where it has been stayed pending resolution of this action.

Gulf responded to the motion to dismiss by filing an amended complaint on July 11, 2003. On September 4, 2003, the Glasbrenners moved to dismiss the amended complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue and other grounds.

In a memorandum and order dated November 19, 2003, I dismissed the amended complaint for improper venue. See Gulf Ins. Co. v. Caldor Corp., No. 03 Civ. 2894 (LLS), 2003

WL 22764542 (S.D.N.Y. Nov. 20, 2003). On August 2, 2005, the Court of Appeals vacated that order and remanded the case. See Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353 (2d Cir. 2005).

Thus, the Court is now presented with the Glasbrenners' original primary grounds for dismissal: lack of subject matter or personal jurisdiction.

The parties have agreed that subject matter jurisdiction is no longer an issue and the Court concurs that there is diversity subject matter jurisdiction. Gulf is a Connecticut corporation doing business principally in New York. The Glasbrenners reside in Pennsylvania. Although The Caldor Corporation (into which the original defendant Caldor, Inc. merged) was a Delaware corporation with a principal place of business in Connecticut (which would defeat diversity), its citizenship is immaterial because it is only a nominal party. Its contractual rights and obligations are subrogated to the Glasbrenners, who are subject to all defenses Gulf has against Caldor.

**3.**

The court must "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).

3.A. The Bankruptcy Proceedings

Gulf argues that the Glasbrenners have waived their defense of personal jurisdiction in this action by their activities in Caldor's bankruptcy proceeding in the Bankruptcy Court for the Southern District of New York. Gulf points to the Glasbrenners' submission to Bankruptcy Court jurisdiction by filing claims, testifying, participating in (mandatory) ADR, and obtaining affirmative relief, which afforded them the right to pursue their claims against Caldor and obtain the New Jersey Judgment they are now seeking to enforce in New Jersey against Gulf.

Assuming, as Gulf claims, that the Glasbrenners consented to the jurisdiction of the Bankruptcy Court by filing proofs of claim and participating in the Caldor bankruptcy proceeding,[3] the issue is whether those actions (without which they would have forfeited their personal injury claim) constitute submission to the jurisdiction of this Court in this declaratory judgment action to dismiss their contract claim against Gulf.

---

[3] The Glasbrenners' activities in the recent bankruptcy appeals before Judge Holwell add nothing, because they merely responded to a re-opening by Gulf of part of the original bankruptcy proceeding.

The cases Gulf cites do not establish their position. In <u>Andros Compania Maritima, S.A. v. Intertanker Ltd.</u>, 718 F. Supp. 1215 (S.D.N.Y. 1989), InterPetrol petitioned the District Court to confirm an arbitration award. <u>Id.</u> at 1216. Andros intervened in that proceeding to assert claims against InterPetrol. <u>Id.</u> While that proceeding was pending, Andros also instituted a separate action against InterPetrol in the same District Court, which was later dismissed for lack of personal jurisdiction over InterPetrol. <u>Id.</u> at 1276-17. InterPetrol then sought to use that determination of non-jurisdiction to insulate itself from the claims Andros was asserting against it in the confirmation proceeding. Remarking on "the absurdity" of that proposition, the court rejected InterPetrol's argument that the absence of personal jurisdiction over it in the second action required dismissal of the claims of Andros, as intervenor, against InterPetrol in the first action. <u>Id.</u> at 1217.

The <u>Andros</u> case is more complex than appears from the above, but this extraction serves to illustrate that a party's appearance as petitioner in one proceeding does not necessarily subject it to personal jurisdiction in another matter, even in the same court.

In General Contracting & Trading Co., LLC v. Interpole, Inc., 940 F.2d 20 (1st Cir. 1991) Interpole, a third-party plaintiff, obtained a default judgment against Trastco, a third-party defendant. Id. at 21. Trastco then attempted to set aside the default judgment for lack of personal jurisdiction. It also instituted a separate action against Interpole in the same court. Id. at 21-22. The First Circuit held that by commencing the second action against Interpole, "Trastco surrendered any jurisdictional objections to claims that Interpole wished to assert against it in consequence of the same transaction or arising out of the same nucleus of operative facts." Id. at 23.

The Glasbrenners' claims and activities in the Caldor bankruptcy proceeding did not arise from the same "nucleus of operative facts" as Gulf's claims in this case. The bankruptcy proceeding involved Susan Glasbrenner's claim of injuries in the Caldor store. This case is concerned with matters which took place outside the bankruptcy proceeding: the obtaining of the New Jersey Judgment and the effect on the Gulf Policy of the claimed failure to give Gulf timely notice of the Glasbrenners' claims. Unlike the General Contracting case, here the parties in the second action are

not the same as in the first: Gulf was not involved with the Glasbrenners in the Caldor bankruptcy.

A more directly applicable case is <u>Capitol Resource Funding, Inc. v. Tri-County Bank of Royston</u>, No. 96 Civ. 746 (RSP/DNH), 1997 WL 538898 (N.D.N.Y. Aug. 27, 1997). In that case, U.S. Product sold to Capitol accounts receivable from a government supply contract. <u>Id.</u> at *2. Unbeknownst to Capitol, U.S Product had already assigned those accounts to Tri-County as security for a loan. <u>Id.</u> at *1-2. Rather than cancel its transaction with U.S. Product, Capitol agreed that Tri-County would receive payments on U.S. Product's government contract, which Tri-County would then pay over to Capitol. <u>Id.</u> at *2. U.S. Product filed for bankruptcy protection, and Capitol sued Tri-County in the United States District Court for the Northern District of New York for withholding payments in violation of their agreement. <u>Id.</u> at *2-3. Capitol argued that Tri-County had waived any objection to personal jurisdiction in that court by its prior appearance in the Northern District's Bankruptcy Court in connection with U.S. Product's bankruptcy proceeding. <u>Id.</u> at *3. The District Court held that:

> By appearing, Tri-County submitted to personal jurisdiction as to any counterclaim filed in the bankruptcy

> action.  See Gardner v. New Jersey, 329
> U.S. 565, 573, 67 S.Ct. 467, 91 L.Ed.
> 504 (1947) (holding that a party "who
> invokes the aid of the bankruptcy court
> by offering a proof of claim and
> demanding its allowances must abide by
> the consequence of that procedure").
> Notwithstanding its appearance in
> bankruptcy court, Tri-County has not
> waived its defense of personal
> jurisdiction in this action.  Here,
> plaintiff's claim concerns a contract
> dispute unrelated to U.S. Product's
> bankruptcy proceeding.  As such, I do
> not find that Tri-County's appearances
> in the bankruptcy court or its hiring
> of New York counsel in that matter
> acted as a waiver of its defense of
> personal jurisdiction in this separate
> action.

Id.

Here, as in Capitol Resource Funding, the claims between two non-debtors concern a contract dispute, in this case carved out and excluded from the debtor's bankruptcy proceeding.  As in Capitol Resource, the Glasbrenners' activities in the Bankruptcy Court did not submit them to the jurisdiction of this Court in this separate and distinct action.

As a spare, Gulf argues that this Court has bankruptcy subject matter jurisdiction because the Bankruptcy Court retained jurisdiction to enforce its final distribution order.  As a source of personal jurisdiction over the

Glasbrenners, Gulf points to the Bankruptcy Code's provision for nationwide service of process.

Regardless of whatever merit that argument might otherwise have, it does not affect the Glasbrenners. As I stated in my November 19, 2003 order,

> . . . the Bankruptcy Court effectively excluded Caldor's insurance coverage from its bankruptcy estate, and no relief can be sought against Caldor in the Bankruptcy Court because that Court specifically forbade claims against or recovery from the Caldor estate. There is no retained jurisdiction in the bankruptcy case on which to premise venue.

Gulf, 2003 WL 22764542, at *2-3. The Court of Appeals agreed. See Gulf Ins. Co. v. Glasbrenner, 417 F.3d at 358 fn. 4. The Bankruptcy Code's nationwide service provisions cannot be used to obtain personal jurisdiction over the Glasbrenners.

3.B. New York's Long-Arm Statute

"In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." Sunward Electronics, Inc. v. McDonald, 362 F.3d

-12-

17, 22 (2d Cir. 2004).[4]  Since there is no such statutory provision, N.Y. C.P.L.R. Section 302(a)(1) applies.  That statute provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state[.]

Under that statute, "long-arm jurisdiction over a nondomiciliary exists where (i) a defendant transacted business within the state and (ii) the cause of action arose from that transaction of business.  If either prong of the statute is not met, jurisdiction cannot be conferred under CPLR 302(a)(1)."  Johnson v. Ward, 4 N.Y.3d 516, 519, 829 N.E.2d 1201, 1202, 797 N.Y.S.2d 33, 34 (2005).

"A nondomiciliary 'transacts business' under CPLR 302(a)(1) when he 'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'"  CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986), quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d

---

[4] Federal question jurisdiction is discussed only because Gulf claims such jurisdiction for its due process and equal protection claims.

-13-

377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967) (alterations in CutCo).

The only basis Gulf offers for its argument that section 302 applies is the Glasbrenners' activities in the Caldor bankruptcy proceeding, and their hiring of New York counsel in that connection. Gulf points out specifically that Susan Glasbrenner testified in New York as part of the Bankruptcy Court's ADR program.

But it is a stretch to characterize the Glasbrenners' activities in the Bankruptcy Court as "transacting business" in New York. The transaction of business normally is viewed as trading or commercial activity such as buying or selling, making contracts, or altering legal relationships between parties by committing a commercial tort or entering a commercial transaction.

As stated by the Court of Appeals in Beacon Enter., Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983):

> Section 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York.

(internal citations omitted).

The New York Court of Appeals has made note of the distinction between "business dealings" and "business

transactions under CPLR 302". Presidential Realty Corp. v. Michael Square West, Ltd., 44 N.Y.2d 672, 405 N.Y.S.2d 37, 38 (1978) ("physical presence alone cannot talismanically transform any and all business dealings into business transactions under CPLR 302 (subd. [a], par. [1]) (e.g., McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604; cf. Glassman v. Hyder, 23 N.Y.2d 354, 296 N.Y.S.2d 783, 244 N.E.2d 259)."), cited and quoted in E-Z Bowz, LLC v. Prof'l Prod. Research Co., No. 00 Civ. 8670 (LTS) (GWG), 2003 WL 22064259, at *8 (S.D.N.Y. Sept. 5, 2003) ("there was no business transaction--let alone a 'New York business transaction'" in attorney's court-related activities).

In any event, the Glasbrenners' activities in the Bankruptcy Court did not give rise to Gulf's claims in this case, which grow out of Gulf's relationship with Caldor. Gulf's contractual arrangements with Caldor took place and were in effect long before the Glasbrenners' claim against Caldor arose.

The Glasbrenners' activities in the Bankruptcy Court were not done in connection with any issue involved in this case, but with the Glasbrenners' need to salvage their claim against Caldor from being discharged in Caldor's bankruptcy. They did not go to the Bankruptcy Court to

"transact business" with any party, but only to obtain leave to prosecute their claims. Once they obtained leave, they returned to the New Jersey court and established a new set of facts, which were never before the Bankruptcy Court. They established liability and obtained a judgment against Caldor, which they will – or will not – be able to enforce against Gulf, depending (among other things) on whether Gulf received timely notice of their claim. Their claim arises, not out of the bankruptcy proceeding, but out of the accident, the New Jersey Judgment and the terms of the Gulf Policy.

As in Capitol Resource Funding, pp. 10-11 supra, the Glasbrenners' hiring of counsel and appearances in the Bankruptcy Court do not impair their defense of lack of personal jurisdiction "in this separate action."

Dismissal of the Glasbrenners for lack of personal jurisdiction leaves only Caldor as a defendant. Since Caldor is purely a nominal party, the case must be dismissed.

### Conclusion

The motion to dismiss the amended complaint is granted.

The Clerk will enter judgment accordingly, with costs

and disbursements to defendants according to law.

So ordered.

Dated: New York, NY
       June 7, 2006

```
                           _____
                              Louis L. Stanton
                                 U.S.D.J.
```